UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK TIMES COMPANY and
CHARLIE SAVAGE,

                                    Plaintiffs,

                - against -

UNITED STATES DEPARTMENT OF
THE TREASURY,

                                    Defendant.

**OPINION AND ORDER**

15 Civ. 5740 (ER)

Ramos, D.J.:

The New York Times Company and reporter Charlie Savage (collectively, "the Times")

seek depositions of three employees of the United States Department of the Treasury

("Treasury"), pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(d).  In the

underlying Freedom of Information Act ("FOIA") suit, the Times is challenging Treasury's

decision to withhold a thirteen-page legal memorandum (the "Memo") under a statutory

exemption from FOIA's disclosure requirements.  The parties' cross-motions for summary

judgment are currently pending before the Court but have not yet been fully briefed.

The Times' motion for depositions is DENIED, but as explained further below, Treasury

is ordered to submit an additional affidavit or declaration from one of its officials.

# I. BACKGROUND

## A. FOIA, Exemption 5, and "Working Law"

FOIA "requires the government to disclose its records unless its documents fall within

one of the specific, enumerated exemptions set forth in the Act."  *Nat'l Council of La Raza v.*

*Dep't of Justice*, 411 F.3d 350, 355 (2d Cir. 2005).  The agency bears the burden of demonstrating that an exemption applies.  *Id.* at 356.

The relevant FOIA exemption in this case is Exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5). "Courts have interpreted Exemption 5 to encompass traditional common-law privileges against disclosure, including the…executive, deliberative process and attorney-client privileges."  *La Raza*, 411 F.3d at 356 (citation omitted).

"The deliberative process privilege applies to documents that are predecisional and deliberative."  *N.Y. Times v. U.S. Dep't of Justice*, 101 F. Supp. 3d 310, 318 (S.D.N.Y. 2015) (citation omitted).  "A document is predecisional if it is 'prepared in order to assist an agency decisionmaker in arriving at his decision' and deliberative if it is 'actually related to the process by which policies are formulated.'"  *Id.* (quoting *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 194 (2d Cir. 2012)).

A document normally protected by Exemption 5 loses that protection and must be disclosed if it includes "an opinion or interpretation" that "embodies the agency's effective law and policy," in other words, its "working law."  *Brennan Ctr.*, 697 F.3d at 195 (internal quotation marks omitted) (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975)).  "The reasons for a decision made by an agency, or a policy actually adopted,…'constitute the working law of the agency.'"  *Id.* at 196 (quoting *Sears*, 421 U.S. at 153).  The "working law analysis is animated by the affirmative provisions of FOIA," which generally requires disclosure of "final opinions, statements of policy and interpretations which have been adopted by the agency, and instructions to staff that affect a member of the public."  *Id.* at 200–01 (citations and internal

quotation marks omitted).  Neither the attorney-client privilege nor the deliberative-process

privilege can be invoked to justify withholding a document that contains an agency's working

law.  *N.Y. Times*, 101 F. Supp. 3d at 318–19 (citations omitted).

### B. The Times' FOIA Request

This case involves notice requirements for the use of electronic surveillance by the Office

of Foreign Assets Control ("OFAC"), an agency within Treasury responsible for, among other

things, administering economic sanctions programs against foreign governments, entities, and

individuals suspected of engaging in international terrorism.  Under the Foreign Intelligence

Surveillance Act of 1978 ("FISA"), targets of electronic surveillance are entitled to notice

whenever the Government intends to use surveillance evidence against them in a legal

proceeding.  *See* 50 U.S.C. § 1806(c).  On September 30, 2014, the Times reported that lawyers

in the Obama Administration were "debating whether the Treasury Department must inform the

people or groups it lists as foreign terrorists when it relies on warrantless surveillance as the basis

for the designation."  Charlie Savage, *Debate Brews Over Disclosing Warrantless Spying*, N.Y.

TIMES, Oct. 1, 2014, at A3.[1]

That same day, the Times submitted to Treasury a request under FOIA (the "Request")

seeking:

> [A]ccess to documents showing the legal conclusions accepted by the Treasury
> Department as the governing legal protocol for under what circumstances, if any,
> and at what stage of the process, FISA's notice provision applies to Office of
> Foreign Assets Control sanctioning decisions and challenges to them.

Declaration of David E. McCraw ("McCraw Decl.") (Doc. 29), Ex. A ("Request").

---

[1] The article appeared online on September 30, 2014, and is also available at:
http://www.nytimes.com/2014/10/01/us/debate-simmers-over-disclosing-warrantless-spying.html.

Treasury FOIA Officer Marshall H. Fields, Jr. ("Fields") responded to the Request on April 13, 2015 (the "Fields Reply").  *See* McCraw Decl., Ex. B ("Fields Reply").  The Fields Reply stated that OFAC had conducted a search and "found one document consisting of 13 pages responsive to your request," *i.e.*, the Memo at issue here.  *Id.* at 1.  OFAC determined, however, that the Memo was "exempt in its entirety from disclosure" pursuant to Exemption 5, based on both the attorney-client and deliberative-process privileges.  *Id.*

The Times filed an administrative appeal on April 16, 2015 (the "Times Appeal"), arguing that the Memo's inclusion of legal conclusions "accepted by the Treasury Department as the governing legal protocol" necessarily meant that the document contained Treasury's "effective law and policy," *i.e.*, Treasury's "working law," and thus must be disclosed.  *See* McCraw Decl., Ex. C ("Times Appeal") at 2–3.  The Times also urged Treasury to approve a discretionary release of the Memo given the public importance of the issue and the low risk associated with disclosing already-settled legal protocol.  *Id.* at 1–2.

On May 21, 2015, John E. Smith ("J. Smith"), Acting Director of OFAC, denied the Times' appeal (the "J. Smith Reply").  *See* McCraw Decl., Ex. D ("J. Smith Reply").  The J. Smith Reply determined that the Memo "is exclusively a pre-decisional and deliberative record, and it should not be released under the working law theory or subject to a discretionary release." *Id.* at 1.[2]

On July 22, 2015, the Times filed suit in this Court seeking a judgment requiring Treasury to disclose the Memo.  Complaint (Doc. 1).  Treasury moved for summary judgment on December 23, 2015.  (Doc. 17).  In support of its motion, Treasury submitted a declaration from Bradley T. Smith ("B. Smith"), Chief Counsel for Foreign Assets Control at Treasury (the "B.

---

[2] Since the Fields Reply determined that the Memo was responsive to the request, the J. Smith Reply did *not* independently assess the Memo's responsiveness.  Declaration of John E. Smith (Doc. 36) ¶ 11.

Smith Declaration").  *See* McCraw Decl., Ex. E ("B. Smith Decl.") ¶ 1.  Most relevant for the

instant motion, the B. Smith Declaration states as follows:

> My office was tasked by OFAC with a search for records responsive to Plaintiff's
> FOIA request.  When conducting our search, we construed Plaintiff's FOIA
> request liberally when determining which records were responsive.  We located
> an undated, draft memorandum prepared by Treasury attorneys, and identified it
> as potentially responsive to the request.  The draft memorandum presented legal
> arguments on behalf of OFAC with respect to OFAC's obligations under the
> FISA in the context of designations and sanctioning decisions.  The reasoning in
> the draft memorandum does not reflect a final legal or policy determination by
> Treasury.  The document is not "*governing legal protocol*" of the Treasury
> Department and therefore is not responsive to that aspect of the FOIA request.  It
> is not precedential, it is not used by or provided to OFAC staff as guidance, and it
> is a draft document.  However, it does reflect draft legal analysis on the
> application of "FISA's notice provision to [OFAC's] sanctioning decisions and
> challenges to them" and thus given our liberal construction of Plaintiff's request,
> we determined that it was responsive but also deliberative and privileged in
> nature.

B. Smith Decl. ¶ 7.  The B. Smith Declaration further states that the Memo was undated and

marked "privileged," "intended to be kept confidential," and has been circulated only to a

"limited number of offices" in Treasury and the Department of Justice ("DOJ").  *Id.* at ¶ 14.  It

states that the Memo was addressed "For The File," was marked "Privileged, Draft-Predecisional

and Deliberative, For Official Use Only" and was in fact pre-decisional and deliberative, was

prepared by "certain Treasury attorneys" in advance of a meeting with DOJ "to help frame issues

subject to ongoing deliberative discussions," and memorialized only "initial, preliminary

advice."  *Id.* at ¶¶ 15–16.  The declaration states that the Memo does not contain any working

law because it "does not have the force and effect of law within Treasury," and because "the

underlying legal analysis and reasoning in the memorandum has not been adopted by Treasury"

or "used as a reference document by OFAC personnel."  *Id.* at ¶ 16.

On February 2, 2016, the Times filed the instant motion pursuant to Rule 56(d), seeking depositions of Fields, J. Smith, and B. Smith.  (Doc. 27).  Treasury opposed the motion on February 23, 2016, submitting additional declarations from Fields and J. Smith.  (Docs. 34–36).

The declaration from Fields (the "Fields Declaration") explained his regular process, upon receiving FOIA requests, for consulting with subject matter experts within both OFAC and B. Smith's office, the Office of Chief Counsel (Foreign Assets Control) ("OCC").  Declaration of Marshall H. Fields, Jr. ("Fields Decl.") (Doc. 35) ¶¶ 10–14.  The declaration then describes the processing of the Request in this case:  Fields' unit tasked individuals within OFAC and OCC to search for responsive records, OCC located the Memo, which "they thought may be responsive," and sent it to Fields; Fields consulted with OCC to determine whether the Memo was in fact responsive and whether Exemption 5 might apply; OCC "determined" that the Memo was responsive and "recommended" withholding it under Exemption 5 based on the attorney-client and deliberative-process privileges; "[b]ased on the consultation with and recommendation from OCC," Field's office drafted and sent the Fields Reply to the Times.  *Id.* at ¶¶ 15–19.

The declaration from J. Smith (the "J. Smith Declaration") states that, after considering the Times' arguments on appeal, he "determined that OFAC properly withheld the memorandum under Exemption [5]."  Declaration of John E. Smith ("J. Smith Decl.") (Doc. 36) ¶ 10.  It further states that J. Smith "did not consider, nor did [he] conduct an independent assessment of, whether or not the document was responsive to the FOIA request, since the question of responsiveness was not challenged in the appeal by the NYT."  *Id.* at ¶ 11.  J. Smith focused only on the applicability of Exemption 5 "and whether the record should be released under the working law theory," and "assumed that the document was responsive."  *Id.*

## II. LEGAL STANDARDS

Fed. R. Civ. P. 56(d), entitled "When Facts Are Unavailable to the Nonmovant," provides as follows:  "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

In FOIA actions, "[a]ffidavits submitted by an agency are accorded a presumption of good faith; accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citation and internal quotation marks omitted).  "In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Id.* (citations omitted).  Courts should not, however, "cut off discovery before a proper record has been developed; for example, where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory." *Families for Freedom v. U.S. Customs & Border Prot.*, 837 F. Supp. 2d 331, 336 (S.D.N.Y. 2011) (citation and internal quotations marks omitted).  District courts have "broad discretion to manage the scope of discovery in FOIA cases." *Id.* (citations and internal quotation marks omitted).

## III. DISCUSSION

The Times does not maintain that Treasury's search was incomplete or inaccurate. Rather, the Times argues that depositions are needed because there remains a factual dispute in the case—namely, the contemporaneous basis for the initial determination that the Memo was "responsive" to the Request.

According to the Times, the issue is disputed because Treasury officials have contradicted themselves. The Fields Reply stated that the Memo was "responsive" to the Request, but now the B. Smith Declaration explains that the Memo is not actually responsive to the "aspect" of the request seeking "governing legal protocol." *See* Memorandum of Law in Support of Plaintiffs' Motion for Discovery ("Times Br.") (Doc. 28) at 2–3 (arguing that depositions are warranted because the B. Smith Declaration "contradict[s]" the Fields Reply and J. Smith Reply on the "threshold issue" of whether the Memo "is responsive to the Request"). Treasury did not specifically articulate this "aspect"-based reasoning during the administrative process, raising it for the first time on its motion for summary judgment before this Court.

To put a finer point on it, the Times wants depositions to probe whether Treasury's "liberal" determination that the Memo was responsive to the some of the request but not the "aspect" requesting the "governing legal protocol" was (i) the actual reasoning employed at the time the request was processed, or (ii) an *ex-post* explanation created for this lawsuit. *See* Times Br. at 4 (describing the "fundamental factual dispute" as whether the Memo shows the "governing legal protocol…accepted by the Treasury Department"); Reply Memorandum of Law in Support of Plaintiffs' Motion for Discovery ("Times Rep.") (Doc. 37) at 1 (same). This issue is surely material. If the record showed that the explanation in the B. Smith Declaration was not Treasury's actual contemporaneous reasoning, it could suggest that Treasury originally

determined that the Memo contained "governing legal protocol" and thus the agency's working law, potentially providing a basis for the Court to order disclosure.[3]

What is less clear is whether this material issue is actually *in dispute* based on the current state of the record.  Government affidavits in FOIA cases are granted a presumption of good faith.  *Carney*, 19 F.3d at 812.  The B. Smith Declaration affirmatively states that the contemporaneous reasoning underlying the Fields Reply was the "liberal," "aspect"-based interpretation laid out in that declaration.  *See* B. Smith Decl. ¶ 7.  The Fields Declaration confirms that Fields consulted with B. Smith's office, OCC, in order to determine whether the Memo was responsive, and that it was in fact OCC who made the original responsiveness determination.  *See* Fields Decl.  ¶¶ 17–18.  Nothing in these declarations suggests that two different responsiveness determinations were made, one at the time the Request was submitted and another in this litigation.  The Times, therefore, is not really identifying a contradiction or inconsistency, so much as it is asking the Court to infer bad faith from the fact that the Fields Reply did not explicate the reasoning later provided in the B. Smith Declaration.  This provides only a weak inference of bad faith, at best, and thus the Court declines to order depositions on that basis.[4]

---

[3] By asking for documents showing "governing legal protocol," the Times tried to craft a request exclusively for documents that could *not* be withheld under Exemption 5 because they contained the agency's working law.  *See* Times Appeal at 3 ("[T]he initial FOIA request was carefully crafted to avoid the kinds of internal deliberations that are often justifiably withheld.").

[4] Indeed, the cases relied upon by the Times, Times Br. at 3–4, involve far more glaring inconsistencies or factual gaps than exist in this case.  *Cf. Porter v. U.S. Dep't of Justice*, 717 F.2d 787, 791–93 (3d Cir. 1983) (granting further discovery where *ex parte* affidavit justifying national-security-based redactions failed to explain significance of classification stamps on responsive documents and whether they were relied upon to justify redactions, and where previous affidavit that was not *ex parte* in fact revealed more information than *ex parte* affidavit); *Wash. Post Co. v. U.S. Dep't of State*, 840 F.2d 26, 38–39 (D.C. Cir. 1988) (allowing deposition, interrogatories, and document requests where agency failed to provide factual predicate for determination that disclosure of person's citizenship status would potentially endanger that person, and where some information about citizenship status had already been made public), *reh'g granted, judgment vacated*, 898 F.2d 793 (D.C. Cir. 1990); *Schaffer v. Kissinger*, 505 F.2d 389, 390–91 (D.C. Cir. 1974) (permitting further discovery where agency failed to provide facts demonstrating whether documents had been properly classified as "confidential"); *Citizens for Responsibility & Ethics in Wash. v. U.S.*

It is true, however, as the Times argues, that the Fields Declaration is not specific enough and leaves a small but noteworthy gap in the factual record, *i.e.*, the facts underlying *his own* individual determination that the Memo was responsive to the Request. Times Rep. at 3–4. The Government is thus ordered to submit an additional affidavit or declaration from Marshall H. Fields, Jr. describing the specific factual basis that *he* relied upon to deem the Memo responsive, including but not limited to facts provided to him by OCC in its recommendation.[5] *Cf.* Times Br. at 2 (requesting deposition from Fields "addressed to the factual basis for [his] belief that the [Memo] was a responsive document containing the agency's governing legal protocol, specifically the facts [he] individually discovered concerning the creation of the [Memo] and its use within Treasury").

Further submissions from the other two Treasury officials are not required at this time. As the Times concedes, B. Smith has already provided representations as to the responsiveness issue in his declaration. *See* Times Rep. at 5 (requesting "the same testimony" from Fields and J. Smith as already received from B. Smith, *i.e.*, "how he construed the initial request and what he

---

[5] *Dep't of Veterans Affairs*, 828 F. Supp. 2d 325, 333–34 (D.D.C. 2011) (ordering further depositions where agency strategically withheld certain information during first round of discovery and submitted "myriad declarations" that "evolved and changed," in case where possibility of intentional or negligent document destruction was at issue); *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 321–22 & n.23 (D. Conn. 2008) (ordering further discovery after "multiple rounds of declarations, supplemental declarations, and second supplemental declarations" all failed to establish the adequacy of the agency's search efforts); *Potomac Navigation, Inc. v. U.S. Mar. Admin.*, Nos. WMN-09-217 and WMN-09-218, 2009 U.S. Dist. LEXIS 116673, at *17–18 (D. Md. Dec. 15, 2009) (ordering further discovery when agency's conclusory assertion that certain documentation did not exist was "difficult to believe" given other produced documents and court's experience with similar FOIA requests).

[5] The Times argues that Fed. R. Civ. P. 56(d) is meant to "give rights to the nonmovant" only and is thus not an appropriate vehicle for an order allowing a movant to submit more affidavits and buttress its own case. Times Br. at 9. But the Times does not dispute, nor could it, that it is well within a district court's discretion to request additional submissions from the government to supplement the factual record before resolving a motion for summary judgment. *See, e.g.*, *Am. Civil Liberties Union v. Office of the Dir. of Nat. Intelligence*, No. 10 Civ. 4419 (RJS), 2011 WL 5563520, at *13 (S.D.N.Y. Nov. 15, 2011) (citing *Halpern v. F.B.I.*, 181 F.3d 279, 295 (2d Cir. 1999)); Defendant's Opposition (Doc. 34) at 9 (citing cases).

learned about the creation, circulation, and use of the document").[6]  And J. Smith did not make a responsiveness determination, because the Times (naturally) did not appeal the favorable determination that it initially received on that issue.  *See* J. Smith. Decl. ¶ 11.

If necessary, the Times may make an appropriate motion for additional discovery after the parties have completed their summary-judgment briefing, at which time the Court can assess the entirety of the record and determine whether or not any genuine issues of material fact still remain that require further discovery.

## IV. CONCLUSION

Treasury is hereby ORDERED to provide an affidavit or declaration from Marshall H. Fields, Jr. on or before **May 13, 2016**.

The Times' cross-motion is due **May 27, 2016**.  Treasury's response and reply is due **June 10, 2016**.  The Times' reply is due **June 24, 2016**.

The Times' motion is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion.  Doc. 27.

It is SO ORDERED.

Dated:    April 26, 2016
          New York, New York

                                            _____
                                            Edgardo Ramos, U.S.D.J.

---

[6] The Times attests that the deposition of B. Smith would focus "on the factual basis for his conclusion that the document was non-responsive and a draft."  Times Br. at 2.  This is essentially asking to take a deposition in order to glean more specific details than the government's declaration provides, a request which could be made in every garden-variety FOIA suit.  The request is not based on any sufficient allegation of bad faith, inconsistency, or inaccuracy.