UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK TIMES COMPANY and
CHARLIE SAVAGE,

                      Plaintiffs,

      - against -

UNITED STATES DEPARTMENT OF
THE TREASURY,

                      Defendant.

**OPINION AND ORDER**

15 Civ. 5740 (ER)

Ramos, D.J.:

The New York Times Company and reporter Charlie Savage (together, "the Times") bring this suit to challenge the response by the Department of the Treasury ("Treasury") to a request under the Freedom of Information Act ("FOIA"). Treasury has moved for summary judgment. The Times opposes the motion and seeks an order from the Court directing Treasury to conduct a new search and make available two of its officials for depositions. For the below reasons, Treasury's motion is GRANTED in part and DENIED in part. Treasury is further directed to make additional submissions detailing the search it already performed, but the Court declines to order a new search or depositions at this time.

**I. BACKGROUND**

  **A. Factual Background and Prior Proceedings**

Under the Foreign Intelligence Surveillance Act of 1978 ("FISA"), targets of electronic surveillance are entitled to notice when the Government intends to use surveillance evidence against them in a legal proceeding. *See* 50 U.S.C. § 1806(c). On September 30, 2014, the Times submitted to Treasury a request under FOIA (the "Request") seeking:

> [A]ccess to documents showing the legal conclusions accepted by the Treasury Department as the governing legal protocol for under what circumstances, if any, and at what stage of the process, FISA's notice provision applies to Office of Foreign Assets Control sanctioning decisions and challenges to them.

Declaration of David E. McCraw ("McCraw Decl.") (Doc. 29), Ex. A ("Request"). The Office of Foreign Assets Control ("OFAC") is the unit within Treasury that imposes and administers economic sanctions against foreign entities suspected of engaging in international terrorism.[1]

Treasury FOIA Officer Marshall H. Fields, Jr. ("Fields") responded to the Request on April 13, 2015 (the "Fields Reply"). *See* McCraw Decl., Ex. B ("Fields Reply"). He reported that Treasury had found one thirteen-page memo (the "Memo") that was "responsive" to the Request, but that Treasury was withholding the Memo under FOIA Exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Fields specifically invoked the attorney-client privilege and the deliberative-process privilege to justify withholding under Exemption 5. Fields Reply at 1.[2]

The Times appealed on April 16, 2015 (the "Times Appeal"). The Times argued that the fact that the Memo was deemed "responsive" to a request for "legal conclusions accepted by the Treasury Department as the governing legal protocol" necessarily meant that the document

---

[1] The request arose from Plaintiff Savage's reporting that the Obama Administration was internally debating the extent of Treasury's notice obligations under FISA when it uses warrantless surveillance evidence to designate foreign terrorists. *See* Charlie Savage, *Debate Brews Over Disclosing Warrantless Spying*, N.Y. TIMES, Oct. 1, 2014, at A3, *available at* http://www.nytimes.com/2014/10/01/us/debate-simmers-over-disclosing-warrantless-spying.html.

[2] Exemption 5 authorizes agencies to withhold "documents that would be subject to privilege in civil litigation." *Adamowicz v. I.R.S.*, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008). "The deliberative process privilege applies to documents that are predecisional and deliberative. A document is predecisional if it is 'prepared in order to assist an agency decisionmaker in arriving at his decision' and deliberative if it is 'actually related to the process by which policies are formulated.'" *N.Y. Times v. U.S. Dep't of Justice*, 101 F. Supp. 3d 310, 318 (S.D.N.Y. 2015) (quoting *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 194 (2d Cir. 2012)).

contained Treasury's "effective law and policy," *i.e.*, Treasury's "working law," and thus must be disclosed. *See* McCraw Decl., Ex. C ("Times Appeal") at 2–3.[3]

The Times Appeal was denied on May 21, 2015 by John E. Smith ("J. Smith"), Acting Director of OFAC, and the instant suit was initiated on July 22, 2015. *See* McCraw Decl., Ex. D; Complaint (Doc. 1). Because Treasury represented that the Memo was responsive to the Request, the Times opted not to challenge the adequacy of Treasury's search, focusing instead solely on the question of whether the Memo was properly withheld under Exemption 5. *See* Joint Letter (Doc. 13) at 2.

Treasury moved for summary judgment on December 23, 2015. (Doc. 17). In support of its motion, Treasury submitted a declaration from Bradley T. Smith ("B. Smith"), Chief Counsel for Foreign Assets Control at Treasury (the "B. Smith Declaration"). *See* McCraw Decl., Ex. E ("B. Smith Decl.") ¶ 1. The B. Smith Declaration explained that the Memo is a "draft memorandum" and "does not reflect a final legal or policy determination by Treasury," and thus was actually not responsive to the "aspect" of the Request seeking "governing legal protocol." *Id.* at ¶ 7. Nevertheless, according to B. Smith, the Memo was deemed responsive under a "liberal construction" of the Request because the Memo contains "draft legal analysis" of the specific topic of OFAC's notice obligations under FISA. *Id.* The B. Smith Declaration further states that the Memo was prepared by "certain Treasury attorneys" in advance of a meeting with

---

[3] A document must be disclosed under FOIA if it includes "an opinion or interpretation" that "embodies the agency's effective law and policy," in other words, its "working law." *Brennan Ctr.*, 697 F.3d at 195 (internal quotation marks omitted) (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975)). "The reasons for a decision made by an agency" or "a policy actually adopted" constitute "'the working law of the agency.'" *Id.* at 196 (quoting *Sears, Roebuck*, 421 U.S. at 153). The "working law analysis is animated by the affirmative provisions of FOIA," which generally require disclosure of "final opinions, statements of policy and interpretations which have been adopted by the agency, and instructions to staff that affect a member of the public." *Id.* at 200–01 (quoting *Sears, Roebuck*, 421 U.S. at 153) (internal quotation marks omitted). Neither the attorney-client privilege nor the deliberative-process privilege can be invoked to justify withholding a document that contains an agency's working law. *See N.Y. Times*, 101 F. Supp. 3d at 318–19 (citations omitted).

the Justice Department "to help frame issues subject to ongoing deliberative discussions," and memorialized only "initial, preliminary advice." *Id.* at ¶¶ 15–16. The declaration also states that the Memo does not contain any working law because it "does not have the force and effect of law within Treasury," and because "the underlying legal analysis and reasoning in the memorandum has not been adopted by Treasury" or "used as a reference document by OFAC personnel." *Id.* at ¶ 16.

The Times then moved the Court for permission to take depositions of Fields, J. Smith, and B. Smith to better understand the contours of Treasury's response. (Doc. 27). In opposition, Treasury submitted additional declarations from Fields and J. Smith. (Docs. 34–36). The declaration from Fields explained that he assigned the Request to subject-matter experts ("SMEs") within OFAC and the Office of Chief Counsel (Foreign Assets Control) ("OCC"),[4] who searched for and produced the Memo, and then recommended that Fields deem the Memo responsive but exempt from disclosure under the attorney-client and deliberative-process privileges. *See* Declaration of Marshall H. Fields, Jr. (Doc. 35) ¶¶ 10–19. The declaration from J. Smith states that he did not make his own responsiveness determination, but rather only reassessed, and ultimately agreed with, the determination to withhold the Memo under Exemption 5 because it did not contain any working law. *See* Declaration of John E. Smith (Doc. 36) ¶¶ 10–11.

The Court denied the Times' request for depositions but ordered Treasury to submit an additional declaration from Fields to describe in further detail his own individual basis for

---

[4] OCC provides "legal services with respect to the implementation, interpretation, and enforcement of economic sanctions programs administered by the Office of Foreign Assets Control (OFAC)." Supplemental Declaration of Bradley T. Smith (Doc. 45) ¶ 2.

deeming the Memo responsive.  *See N.Y. Times Co. v. U.S. Dep't of the Treasury*, No. 15 Civ. 5740 (ER), 2016 WL 1651867, at *5 (S.D.N.Y. Apr. 26, 2016).

### B. Proceedings Following the Court's April 26, 2016 Order

Treasury submitted the supplemental declaration from Fields on May 13, 2016.  *See* Supplemental Declaration of Marshall H. Fields, Jr. ("Supp. Fields Decl.") (Doc. 39).  Fields explained that he assigned the Request to OCC because OCC is considered the SME "with respect to records containing legal equities."  Supp. Fields Decl. ¶ 8.  Fields further explained that he "relied exclusively on OCC's determination regarding the responsiveness and privileged nature" of the Memo and did not conduct his own "independent analysis of the responsiveness of the [Memo]."  *Id.* at ¶ 10.  "Rather, because of the legal nature of the record, [Fields] relied on the determination of OCC, the SME, that the [Memo] should be treated as responsive…."  *Id.*

The Times submitted its opposition to Treasury's motion for summary judgment on May 26, 2016, but declined to file its own cross-motion for summary judgment, effectively conceding that there was no basis in the evidentiary record to challenge Treasury's representations about the deliberative, predecisional nature of the Memo and the resulting withholding of that document.  *See* Memorandum of Law in Opposition ("NYT Opp'n") (Doc. 42) at 8 ("The Times concedes that without discovery it has no basis for summary judgment as to the Treasury Legal Memo.").  Instead, accepting Treasury's declaration that it did not locate any document containing "governing legal protocol," the Times now challenges the adequacy of Treasury's initial search and seeks an order from the Court directing Treasury to undertake a new search and produce B. Smith and Fields for depositions.  *Id.* at 8–9; Letter Motion ("NYT Letter") (Doc. 46) at 3.

Treasury objects to this request, arguing first and foremost that the Times both did not include a challenge to the search's adequacy in its complaint and waived that challenge by

5

failing to raise it until opposing Treasury's summary-judgment motion.  *See* Defendant's Reply ("Gov. Rep.") (Doc. 44) at 4–5.  Treasury also takes the search adequacy issue head on, briefing it and submitting an additional declaration from B. Smith (the "Supp. Smith Declaration") to substantiate the adequacy of the search that was performed.  *See* Supplemental Declaration of Bradley T. Smith ("Supp. Smith Decl.") (Doc. 45); Gov. Rep. at 5–10.

## II. DISCUSSION

This is an unusual FOIA case that has been stymied by miscommunication.  The Times is right to say that the Request was crafted unambiguously to reach only working law, and that Treasury should have explained from the outset its liberal interpretation of the Request and the fact that the Memo did not contain "governing legal protocol."  That explanation from Treasury, while now accepted as true by the Times, came late enough in the litigation process that the Times' failure to challenge the adequacy of the search up to this point is understandable.  On the other hand, the Times cannot claim total surprise by Treasury's representations in this litigation, given that Treasury has consistently invoked the deliberative-privilege process and expressly denied the applicability of the working law theory on appeal—while it was possible that Treasury was taking an inherently contradictory position (*i.e.*, arguing that a document containing "governing legal protocol" did not contain working law), the Times should have been quicker to challenge the adequacy of a search that turned up only one document that Treasury was insisting to be predecisional and deliberative, and not working law.

All things considered, and assessing the potential prejudice to both sides, the Court in its discretion will consider the Times' challenge to the search's adequacy on the merits.  *Cf. Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001).

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate…." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citations omitted). If "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 517 (S.D.N.Y. 2007) (quoting *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998)).

"An agency's search is adequate when it is 'reasonably calculated to uncover all relevant documents' and the agency can 'demonstrate beyond material doubt that the search was reasonable.'" *Nat'l Immigration Project of the Nat. Lawyers Guild v. U.S. Dep't of Homeland Sec.*, No. 11 Civ. 3235 (JSR), 2012 WL 6809301, at *3 (S.D.N.Y. Dec. 27, 2012) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). "[W]hen a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)) (internal quotation marks omitted). "Under this standard, the relevant question 'is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*' under the particular circumstances of the case." *Bloomgarden v. U.S. Dep't of Justice*, 10 F. Supp. 3d 146, 152 (D.D.C. 2014) (quoting *Weisberg v. U.S. Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

"Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search…are sufficient to sustain the agency's burden" and "are accorded a presumption of good faith." *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190–91 (2d Cir. 2012) (quoting

*Carney*, 19 F.3d at 812) (internal quotation marks omitted).  In its submissions, an agency must "identify the searched files and describe at least generally the structure of the agency's file system," explain why "further search[es] [are] unlikely to disclose additional relevant information," establish that "they searched all custodians who were reasonably likely to possess responsive documents," and set forth "the search terms and the type of search performed."  *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012) (citations and internal quotation marks omitted); *see also, e.g.*, *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment."); *Nat'l Immigration Project*, 2012 WL 6809301, at *4 ("An agency's affidavits or declarations should set forth the search terms and the type of search performed….[and must] supply more than glib government assertions of complete disclosure or retrieval.") (citations and internal quotation marks omitted).

      The Supp. Smith Declaration describes Treasury's search in response to the Request.  It first explains that OFAC's FOIA office initially assigned the search to OCC plus four other individuals within OFAC—the Director, the Deputy Director, the Associate Director in the Office of Global Targeting, and an Administrative Management Specialist for assistance searching the emails of OFAC's former Deputy Director.  Supp. Smith Decl. ¶ 6.  From there, "based on the narrow legal issue raised," OCC determined that only two OCC attorneys could have records "potentially responsive" to the Request—B. Smith himself, and "one other attorney."  Supp. Smith Decl. ¶ 7.  B. Smith conducted a search of his emails, paper files, and

computer files. *Id.* at ¶ 8. The other OCC attorney "had been working on FISA issues in [OCC] for several years, and was familiar with the FISA-related records in his possession as well as certain records maintained by [OCC] based on recent searches that he had performed in connection with this work." *Id.* at ¶ 9. Accordingly, this other attorney "was able to provide a response to the FOIA request without conducting an additional physical or electronic search of his records," identifying the Memo as the only "potentially responsive document," even under a liberal interpretation of the Request. *Id.* at ¶¶ 9–10. The declaration further represents that OCC "would have been aware of and involved in the drafting" of any documents or "governing legal protocol" regarding the applicability of FISA's notice provisions to OFAC's sanctioning decisions. *Id.* at ¶ 11. Thus, "based on the subject matter" of the Request and OCC's "familiarity with those in Treasury who had been engaged on the issue," B. Smith and his colleague determined that no one else in OFAC would have any other potentially responsive documents, nor was B. Smith aware of the existence of any such documents, which he attests he would have been *if* such documents had existed, "given the important legal questions involved." *Id.* at ¶¶ 12–13. Finally, B. Smith reconfirmed that OCC would have determined that no responsive documents existed if the Request had been strictly construed to reach only Treasury's "governing legal protocol." *Id.* at ¶ 15.

In requesting a new search and depositions, the Times does not argue that Treasury's representations are untruthful or made in bad faith, but only that they are incomplete. NYT Letter at 2. Specifically, the Times questions (i) the other OCC attorney's failure to conduct an actual search, (ii) the absence of information regarding results of the searches done by the four individual OFAC officials, (iii) the lack of details about the meeting for which the Memo was prepared and whether such deliberations are ongoing, which "could help explain why no further

9

documents were turned up," and (iv) the absence of information regarding "whether OFAC officials took notes or created memos to file or sent a confirming email to memorialize what was said." *Id.* at 2–3.

The Court agrees with the Times to the following extent: Treasury's submissions thus far do not demonstrate bad faith or lack of truthfulness, but there does remain a genuine issue of material fact as to whether the search already completed was adequate. In other words, Treasury's submissions are insufficiently detailed as they stand, but the Times has not demonstrated a need for a new search or depositions, at least at this stage.

Treasury is thus instructed to submit further affidavits or declarations describing the adequacy of its prior search. *See Beltranena v. Clinton*, 770 F. Supp. 2d 175, 187 (D.D.C. 2011) ("[W]here—as here—'an agency's affidavits regarding its search are deficient, courts generally do not grant discovery but instead direct the agency to supplement its affidavits.'") (quoting *Jarvik v. C.I.A.*, 741 F. Supp. 2d 106, 122 (D.D.C. 2010)). Specifically, the Court requires more details as to the kinds of information and files housed within OCC, why the choice of custodians was reasonable, why certain record repositories were searched while others were not, and the search terms that were employed. *See generally, e.g.*, *Vietnam Veterans of Am. Connecticut Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 227 (D. Conn. 2014); *Nat'l Sec. Counselors v. C.I.A.*, 960 F. Supp. 2d 101, 152–54 (D.D.C. 2013). Regarding the four specific issues that the Times raises (listed above), the first two go to the adequacy of the search, and Treasury should address these issues in its supplemental submissions.[5] But the

---

[5] Treasury argues that an agency official's preexisting familiarity with the scope and content of records may excuse performance of a new search in response to a FOIA request. *See* Letter Response (Doc. 47) at 2–3. But even if that were so, here the Court has no specific information about the other OCC attorney's knowledge, records, or prior searches, including the types of records previously searched and the search terms used. It may be that the OCC attorney was justified in not engaging in a new search in response to the Request because the attorney had recently undertaken an adequate search reasonably calculated to discover legal protocol governing FISA's application to sanctioning decisions, but the Court cannot determine as much on the present record. Alternatively, rather than

last two, while perhaps illuminative of why the search did not produce a document containing "governing legal protocol," do not necessarily speak to whether the search's *methodology* was reasonable, and Treasury is not required to address them in supplemental submissions. That said, additional context about whether "governing legal protocol" exists in document form may very well buttress Treasury's defense of its search methodology. *Cf. Am. Civil Liberties Union v. U.S. Dep't of Justice*, 90 F. Supp. 3d 201, 218 (S.D.N.Y. 2015) (noting express representation from DOJ regarding lack of final written policy on application of FISA notice provisions).

### III. CONCLUSION

Treasury's motion for summary judgment is GRANTED as to the withholding of the Memo pursuant to FOIA Exemption 5. It is DENIED as to the adequacy of the search, with leave to renew following supplemental submissions and briefing.

Treasury is directed to submit its supplemental affidavits or declarations on or before **September 16, 2016**. Treasury also has the option of submitting a supplemental brief on that date, but it should be no longer than fifteen (15) pages. The Times is then directed to submit its own response brief on or before **October 14, 2016**, to be no longer than fifteen (15) pages. Treasury's reply brief, no longer than five (5) pages, is due on or before **October 28, 2016**.

The Clerk of the Court is respectfully directed to terminate the motion, Docs. 17, 46.

It is SO ORDERED.

Dated:   August 2, 2016
         New York, New York

                                                              Edgardo Ramos, U.S.D.J.

---

justify the old search, Treasury is free to have the other OCC attorney run a new search and put in additional submissions detailing the methodology and results of that new search.